**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3745-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

RONRAY L. HARRIS,
a/k/a RON RAY, RONALD
HARRIS, RONRAY HARRIS,
RONALD R. HARRIS, RON
MARROW, RON R. HARRIS,
RONRAY L. HARRIS, and
RON HARRIS,

     Defendant-Appellant.

_____

Argued September 15, 2021 - Decided October 14, 2022

Before Judges Accurso and Rose.

On appeal from the Superior Court of New Jersey,
Law Division, Cape May County, Indictment No.
17-05-0307.

Nakea J. Barksdale, Assistant Deputy Public
Defender, argued the cause for appellant (Joseph E.
Krakora, Public Defender, attorney; Nakea J.
Barksdale, of counsel and on the brief).

Gretchen A. Pickering, Senior Assistant Prosecutor, argued the cause for respondent (Jeffrey H. Sutherland, Cape May County Prosecutor, attorney; Gretchen A. Pickering, of counsel and on the brief).

The opinion of the court was delivered by

ACCURSO, J.A.D.

Defendant Ronray L. Harris was charged in a five-count indictment with first-degree robbery, N.J.S.A. 2C:15-1(a)(1); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d); fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d); and fourth-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(a).[1] The jury acquitted him of the weapons charges, and the judge thereafter dismissed the certain persons offense. Defendant was convicted of third-degree theft from the person, N.J.S.A. 2C:20-2(b)(2)(d), and second-degree aggravated assault. The judge sentenced defendant to a discretionary extended prison term of sixteen years on the aggravated assault, subject to the periods of parole ineligibility and

---

[1] A subsequent indictment charged defendant with third-degree bail jumping, N.J.S.A. 2C:29-7. Defendant pleaded guilty to the charge and was sentenced to three years in State prison concurrent to the sentence imposed in this matter.

2

supervision required by the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, and to a concurrent five-year term on the theft.

At trial, the State established that shortly after 3:30 a.m. on February 23, 2017, Wildwood Police received a 911 call from Gerald Saunders claiming he'd just been stabbed at the bus station and needed an ambulance. The two-minute call was played for the jury. Saunders identified defendant as his assailant, and claimed defendant stabbed him just after Saunders got off the bus. Saunders also told the dispatcher defendant ran off with Saunders' work coat.

When police arrived, they found Saunders bleeding from a gash on his arm and a puncture wound in his back. The bus driver testified that although she didn't know his name, Saunders was a regular on her bus, which he took to work. The driver testified that after Saunders got off the bus that morning and was retrieving his bike from inside a cargo hold near the door, she heard a man approach him. The two walked toward the doors of the bus terminal and began to fight. Then Saunders ran back to the bus, told the driver he'd been stabbed and asked her to call the police. The jury viewed a New Jersey Transit video of the altercation outside the bus.

The video showed a man in a black jacket and hooded sweatshirt approach Saunders as he was removing his bike from the cargo hold. The two appear to exchange words and, after the man appears to lunge at Saunders, one or two blows. As the man drags Saunders' bike away from the bus, Saunders follows, taking off a bright blue jacket and laying it across a trash receptacle as he does so. When Saunders catches up to the man and attempts to yank his bike back from him, the two square up. A quick exchange of blows follows, and then Saunders backs quickly away from the man and turns to run toward the bus as the man follows. Saunders enters the bus briefly and the man walks out of the terminal, picking up Saunders' jacket, which he carries off with him. Saunders starts to follow the man to the exit and then pulls out a cell phone. The entire altercation occurs in less than two minutes.

The responding officer told the jury Saunders was bleeding from his arm and back, and the wounds looked as though he'd been stabbed. In an audio recording from the officer's body camera played for the jury, Saunders told the officers what happened. He claimed he and defendant had previously had an argument over defendant trying to take a puppy without paying for it. And that morning as he was getting his bike out of the bus, defendant came up behind him and said, "See, I could've had you" and dragged his bike off.

A-3745-18

Saunders followed him, taking off his coat and trying to get his bike back, telling defendant "Yo, I gotta go to work." Saunders claimed that after he took off his coat, defendant "just started juggin." Saunders told the officer he didn't see a knife and didn't realize he'd been cut until he went to throw a punch and saw his arm was bleeding. He again identified defendant as the man who'd stabbed him and provided a description for the officers. The officer testified no knife or other weapon was ever recovered.

The EMT who tended to Saunders agreed with the officer the wounds appeared to be stab wounds. He testified the technicians could not get the bleeding from the puncture wound in Saunders' back under control and feared there had been damage to an artery or internal organ. The technicians requested the assistance of an advanced life support unit, and after rendezvousing with that unit, asked for a medevac helicopter. That request was declined due to weather conditions, and Saunders was taken by ambulance to the hospital.

Saunders also testified. He initially denied he'd made the 911 call. After being shown the transcript of the call, Saunders admitted he'd placed it. He explained he'd identified defendant as the man who attacked him, "[c]ause I thought it was him," but denied he'd been stabbed that night, testifying he was

5

"cut." He explained he and defendant had previously had "a little argument, confrontation" after defendant attempted to take a puppy Saunders had without paying full price, "[s]o the night I got stabbed I thought it was him." Saunders denied speaking to an officer at the bus terminal. He also claimed he could not remember what he'd said in the statement he'd made to the detective at the hospital. He could not remember telling the responding officers it was defendant who'd stabbed him or identifying defendant in a photo in the hospital. He did, at the prosecutor's request, show his scars to the jury.

Following a <u>Gross</u>[2] hearing, defendant's statement to the detective, in which he identified defendant's photo and confirmed he was the man who stabbed him, was played for the jury. The detective testified Saunders told him defendant had dated Saunders' girlfriend's daughter, and that he'd known him since he was twelve years old. Defendant did not testify.

Defendant raises the following points on appeal:

> POINT I
>
> THE FAILURE OF THE TRIAL COURT TO
> INSTRUCT THE JURY ON MUTUAL COMBAT AS
> A LESSER-INCLUDED OFFENSE OF
> AGGRAVATED ASSAULT CONSTITUTED A
> VIOLATION OF DEFENDANT'S RIGHT TO DUE
> PROCESS OF LAW AND A FAIR TRIAL. U.S.

---

[2] <u>State v. Gross</u>, 121 N.J. 1 (1990).

CONST. AMENDS. VI AND XIV; N.J. CONST.
ART. I, PARS. 9 AND 10.

POINT II

DEFENDANT'S SENTENCE OF 16 YEARS WITH
AN 85% PAROLE DISQUALIFIER FOR THEFT,
AGGRAVATED ASSAULT, AND BAIL JUMPING
IS EXCESSIVE, UNDULY PUNITIVE, AND MUST
BE REDUCED BECAUSE THE TRIAL COURT
ERRED IN ITS FINDING AND WEIGHING OF
AGGRAVATING AND MITIGATING FACTORS.
U.S. CONST. AMENDS. VI AND XIV; N.J. CONST.
ART. I, PARS. 9 AND 10.

After having reviewed the record, we reject both arguments.

There is no question but that "[a]ppropriate and proper charges to a jury are essential for a fair trial." State v. Collier, 90 N.J. 117, 122 (1982). "[E]rroneous instructions on material issues are presumed to be reversible error, excusable only if they are harmless beyond a reasonable doubt." State v. Crisantos, 102 N.J. 265, 273 (1986). "The test of whether an error is harmless," however, "depends upon some degree of possibility that it led to an unjust verdict." State v. Burton, 309 N.J. Super. 280, 289 (App. Div. 1998). "The possibility must be real, one sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." Ibid.

The judge charged the jury at defendant's request with all lesser included offenses of robbery and aggravated assault, including third-degree theft from a person, N.J.S.A. 2C:20-2(b)(2)(d); third-degree aggravated assault, bodily injury purposely or knowingly with a deadly weapon, N.J.S.A. 2C:12-1(b)(2); third-degree aggravated assault, significant bodily injury, N.J.S.A. 2C:12-1(b)(7); fourth-degree aggravated assault, bodily injury recklessly with a deadly weapon, N.J.S.A. 2C:12-1(b)(3); as well as the disorderly persons offenses of simple assault, bodily injury purposely, knowingly or recklessly, N.J.S.A. 2C:12-1(a)(1); and simple assault, negligent bodily injury with a deadly weapon, N.J.S.A. 2C:12-1(a)(2). Defendant also asked for a petty disorderly persons offense charge under N.J.S.A. 2C:12-1(a) for simple assault "committed in a fight or scuffle entered into by mutual consent," based on Saunders having taken off his jacket and putting "his hands up to engage in a fight." The State objected, arguing Saunders only did so after defendant had forcibly taken Saunders' bike and dragged it away. The prosecutor argued a victim who engages with a thief to regain possession of his property has not mutually consented to a fight.

Defense counsel countered that the man in the video who scuffled with Saunders, who counsel claimed was not defendant, obviously never had any

intent to steal Saunders' bike, which the man left on the platform. Counsel contended the man only pulled the bike away to get Saunders away from the bus, because his purpose "was to fight and Mr. Saunders agreed to that fight by taking off his coat and putting up his hands."

The prosecutor argued that even allowing defendant's purpose was a fight and not a theft, Saunders was stabbed, and there could be no mutual consent to being lured into a fist fight with someone armed with a concealed deadly weapon. The judge denied the charge, finding the evidence did not support it, and that including it along with the simple assault, bodily injury and simple assault, deadly weapon charges would unnecessarily complicate the charge and confuse the jury.

The law is clear that in order "[t]o give full force to the reasonable doubt standard," as well as to preserve a defendant's right "to have the jury consider all defenses supported by the evidence, . . . a defendant is entitled to a charge on all lesser included offenses supported by the evidence," State v. Short, 131 N.J. 47, 53 (1993), regardless of whether the included defense is indictable, N.J.S.A. 2C:1-8(d). When a defendant requests a lesser included offense charge, the trial judge must thoroughly examine the record to determine whether there is a rational basis in the evidence for finding the defendant was

9

not guilty of the greater offense but was guilty of the lesser included one. State v. Sloane, 111 N.J. 293, 299 (1988). The Court in Sloane likened a defendant's entitlement to a lesser offense charge to the right to have the jury instructed on any available defense supported by the evidence. Id. at 303.

Although defendant is correct that there was some evidence in the record regarding Saunders' willingness to engage in fisticuffs with defendant, we cannot find the evidence supported the defense of mutual combat. "It is a well-settled principle of law that an aggressor will not be allowed, under the law, to mitigate his crime on the theory of mutual combat when it appears that his victim had no desire to fight, and intended to fight only to the extent that a defense of his person against an unprovoked assault was necessary." State v. Pasterick, 285 N.J. Super. 607, 617 (App. Div. 1995) (quoting Langford v. State, 93 S.E.2d 1, 3 (1956)). "[M]utual combat requires a mutual intent to fight, as distinguished from an encounter where one is attacking and the other is merely defending himself." Ibid. (quoting 2 Charles E. Torcia, Wharton's Criminal Law § 161 at 361 (15th ed. 1994)).

The evidence was unequivocal that defendant was the aggressor in the encounter captured on video, lunging at Saunders and forcibly taking the bike he needed to get to work. The video also makes plain Saunders only took off

and laid aside his work coat as he followed defendant dragging the bike, just before attempting to unsuccessfully yank it back from him. Although Saunders directed a couple of punches at defendant, he did so only after he was attacked by defendant.

In addition, there was nothing suggesting defendant suffered any injury, whereas Saunders clearly suffered seriously bleeding wounds to his arm and back. In the context of discussing whether mutual combat can give rise to a passion/provocation defense in a murder prosecution, the Court in Crisantos noted the common law qualifier that "the contest must have been waged on equal terms and no unfair advantage taken of the deceased." 102 N.J. at 274 (quoting 1 O. Warren & B. Bilas, Warren on Homicide § 110 at 525-26 (1938)). "[I]f a person, under color of fighting on equal terms, kills the other with a deadly weapon which he used from the beginning or concealed on his person from the beginning, the homicide constitutes murder." Id. at 275 (quoting Torcia, § 110 at 254). Although defense counsel argued in closing that Saunders' wounds could have been caused by the quick scuffle next to the open cargo door on the bus, the video establishes Saunders had already closed the door before any scuffle began.

Viewing all these facts in a light most favorable to defendant, we are satisfied the trial court did not err in failing to instruct the jury on mutual combat as a lesser included offense of aggravated assault. There is no view of the evidence that would provide a jury a rational basis to acquit defendant of second-degree aggravated assault and convict him of petty disorderly person simple assault based on mutual combat. See State v. Savage, 172 N.J. 374, 398 (2002).

We also reject defendant's claim his sentence is excessive. Defendant concedes he was extended-term eligible as a persistent offender. N.J.S.A. 2C:44-3(a). He contends the trial court failed to consider the age of his prior convictions and that none involved violent offenses in determining an extended term was necessary. And although he presented several mitigating factors, the court rejected all of them. On appeal, he contends both mitigating factor one, that defendant's conduct did not cause serious harm, N.J.S.A. 2C:44-1(b)(1), and eleven, that the imprisonment of the defendant would entail excessive hardship to his family, N.J.S.A. 2C:44-1(b)(11), should have been found. He contends the undue weight the trial court accorded the aggravating factors it found and its failure to find mitigating factors one and eleven

resulted in his manifestly excessive sixteen-year NERA term, which should be vacated and the matter remanded for resentencing.

After reviewing defendant's extensive criminal history, consisting of eight prior indictable convictions, including assault and resisting arrest in 1996, third-degree possession with intent to distribute a controlled dangerous substance in 1998, third-degree hindering his own prosecution and a fourth-degree certain persons offense in 2002, third-degree possession of CDS, fourth-degree hindering prosecution, a fourth-degree certain persons offense in 2008, and third-degree possession of CDS in 2012, as well as four disorderly persons offenses, three municipal ordinance violations, a pending bail jumping charge, and four juvenile adjudications, the judge found aggravating factors three, risk of recidivism, N.J.S.A. 2C:44-1(a)(3); six, the extent of the defendant's prior record and the seriousness of the crimes of which he has been convicted, N.J.S.A. 2C:44-1(a)(6); and nine, the need to deter, N.J.S.A. 2C:44-1(a)(9), and no mitigating factors.

As to the mitigating factors defendant presses on appeal, the judge rejected mitigating factor one because the jury convicted defendant of purposefully or knowingly causing Saunders serious bodily injury and mitigating factor eleven because, although defendant had at that time seven

children between the ages of eleven months and twenty-five years, the hardship facing his family, whom the pre-sentence report reflected lived in another state at an unknown address, was not different from others in the same circumstances.

The judge agreed defendant satisfied the statutory prerequisites for sentencing as a persistent offender and based on her assessment of the aggravating and mitigating factors, rejected the State's request for an aggregate eighteen-year NERA term for aggravated assault, and instead determined to sentence defendant to sixteen years in State prison, subject to NERA, and a concurrent five-year term on the theft conviction. His subsequent three-year sentence for bail jumping was also run concurrently.

Having considered defendant's arguments, we find no basis to reverse his sentence. Defendant's sixteen-year extended-term sentence is concededly within the range of the five-year minimum of the ordinary-term range for a second-degree offense, N.J.S.A. 2C:43-6(a)(2), and the twenty-year maximum of the extended-term range, N.J.S.A. 2C:43-7(a)(3). The aggravating factors the court found have ample support in the record and there was no error in the court relying on defendant's extensive criminal record in support of both the aggravating factors as well as its extended term sentence. See State v. Tillery,

238 N.J. 293, 327-28 (2019). The court did not err in rejecting mitigating factors one and eleven as they lacked support in the record. Accordingly, because the trial court's findings and balancing of the aggravating and mitigating factors are supported by adequate evidence in the record, and the sentence imposed is neither inconsistent with the sentencing provisions of the Code of Criminal Justice nor shocking to the judicial conscience, we affirm. See State v. Fuentes, 217 N.J. 57, 70-71 (2014).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3745-18